IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALEXANDER WILLIAMS, | : | Civil No. 3:24-cv-77 |
| Plaintiff | : | |
| v. | : | (Judge Mariani) |
| WARDEN DAVE WAPINSKY, C.O. MATTHEW DONNELLY, | : | |
| Defendants | : | |

**MEMORANDUM**

Plaintiff Alexander Williams ("Williams"), an inmate who was housed, at all relevant times, at the Schuylkill County Prison, in Pottsville, Pennsylvania, commenced this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Warden Dave Wapinsky and Correctional Officer Matthew Donnelly. Presently pending before the Court is Defendants' motion (Doc. 13) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant the motion.

I. **Allegations of the Complaint**

Williams alleges that, beginning on May 28, 2023, he was "kept in a cell with 2 other inmates, in an inhuma[ne] condition for more than 30 days in a 8 x 21 cell" and had to sleep on the floor. (Doc. 1, p. 4). Due to the overcrowding, Williams asserts that he was assaulted and charged with assaulting others. (*Id.*). Williams seeks monetary relief. (*Id.* at p. 6).

Defendants move to dismiss the complaint pursuant to Rule 12(b)(6). (Doc. 13). The motion is fully briefed and ripe for resolution.[1]

## II. Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations,…a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

---

[1] Williams' brief in opposition to Defendants' motion to dismiss contains facts that are not expressly set forth in the complaint. (*See* Doc. 23). The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## III. Discussion

### A. Personal Involvement

Individual liability will be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). Liability "cannot be predicated solely on the operation of respondeat superior." *Id.* In other words, defendants in § 1983 civil rights actions "must have personal involvement in the alleged wrongs . . . shown through allegations of personal direction or of actual knowledge and acquiescence." *Atkinson v. Taylor*, 316 F.3d 257, 271 (3d Cir. 2003); *Rode*, 845 F.2d at 1207-08. Acquiescence requires both contemporaneous knowledge of the alleged wrongdoing and direct supervisory authority over the subordinate actor. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08. Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. When a plaintiff merely hypothesizes that an individual defendant may have had knowledge of or personal involvement in the deprivation of his or her rights, individual liability will not follow. *Atkinson*, 316 F.3d at 271; *Rode*, 845 F.2d at 1207-08.

It is clear that Williams failed to allege the personal involvement of either Defendant. Although Williams names two Defendants—Wapinsky and Donnelley—he does not include any specific allegations of wrongdoing that would establish personal involvement by either

4

Defendant in the purported constitutional violation. In fact, Defendants Wapinsky and Donnelley are not mentioned in the body of the complaint. In order to state a Section 1983 claim, Williams was required to specify each Defendant's personal involvement in the alleged constitutional misconduct. Williams failed to do so. Moreover, to the extent that Williams attempts to hold Defendants Wapinsky and Donnelley liable based on their supervisory roles, this claim also fails. It is well-established that officials may not be held liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior*. See *Rode*, 845 F.2d at 1207. Insofar as Williams' claims against Defendants Wapinsky and Donnelley rely on a *respondeat superior* theory of liability, they are entitled to dismissal on this ground. Accordingly, the Court must dismiss the Eighth Amendment claim against Defendants Wapinsky and Donnelley for lack of personal involvement.

      **B.**    **Defendants are entitled to Qualified Immunity on Eighth Amendment Conditions of Confinement Claim**

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care, and personal safety. See *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Helling v. McKinney*, 509 U.S. 25, 31 (1993). To show that conditions of confinement violate the Eighth Amendment, a plaintiff bears the burden of proving two requirements: "(1) the deprivation alleged must be, objectively, 'sufficiently serious,'" resulting in the "denial of 'the minimal civilized measure of life's necessities,'" and "(2) the 'prison official must have a sufficiently culpable state of mind.'" *Thomas v. Tice*, 948

F.3d 133, 138 (3d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834; *Wilson v. Seiter*, 501 U.S. 294, 299, 302-303 (1991) (cleaned up)); *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir. 2020). Only "extreme deprivations" are sufficient to present a claim for unconstitutional conditions of confinement. *Fantone v. Herbik*, 528 F. App'x 123, 127 (3d Cir. 2013) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992)).

To satisfy the first requirement, Williams "must show that he is incarcerated under conditions posing a substantial risk of serious harm," but he need not show actual injury. *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441 (3d Cir. 2020) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (internal quotations omitted)). "The proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm." *Id.* (quoting *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015)). "This is a totality-of-the circumstances analysis" and should consider the duration and severity of the unconstitutional conditions. *McClure*, 820 F. App'x at 128.

Williams' complaint fails at both elements. The allegations in support of this claim are centered around Williams' placement in a cell with two other inmates. Alleging that he was triple celled for approximately thirty days does not, in itself, establish a constitutional violation. *See, e.g.*, *Hubbard v. Taylor*, 538 F.3d 229, 232-36 (3d Cir. 2008) (holding that triple celling pretrial detainees for three to seven months did not violate the Due Process Clause of the Fourteenth Amendment); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991)

("It is clear that double or triple celling of inmates is not *per se* unconstitutional."); *North v. White*, 152 F. App'x 111, 113 (3d Cir. 2005) (nonprecedential) (noting that triple celling is not *per se* unconstitutional and holding that triple bunking inmate, in the absence of other unconstitutional conditions, did not amount to an Eighth Amendment violation). Williams alleges that he was confined with two other inmates in an 8' x 21' cell for thirty days, slept on the floor, and engaged in a fight. His allegations fail to state a claim because they do not plausibly establish that the conditions of confinement at the Schuylkill County Prison amounted to punishment or deprived him of any basic human need such as food, medical care, sanitation, or security. *See Wilson*, 501 U.S. at 305 ("Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists."); *Bell v. Wolfish*, 441 U.S. 520, 542-43 (1979) (double-bunking did not violate constitutional rights of pretrial detainees when detainees had sufficient space for sleeping and use of common areas, and the average length of incarceration was 60 days); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) ("The critical issue for Eighth Amendment purposes is not the number of prisoners who share facilities; rather, it is whether the alleged overcrowding has somehow harmed the prisoner."); *Hubbard*, 538 F.3d at 232-35 (triple celling of pretrial detainees, some of whom were made to sleep on floor mattresses for three to seven months, and housing of detainees in gym, weight room, and receiving area due to overcrowding, did not amount to punishment). Williams' allegations fail to state a sufficiently serious deprivation.

7

Williams also fails to plead deliberate indifference by either Defendant. He does not allege that Wapinsky or Donnelley were aware of the purportedly unconstitutional conditions of confinement, nor that either Defendant was deliberately indifferent to the conditions. As noted above, Williams does not provide any allegations of Defendants' personal involvement. Because Williams failed to plausibly allege either element of an Eighth Amendment conditions of confinement claim, the Court will grant Defendants' motion to dismiss this claim.

Even if Williams had stated a colorable constitutional claim relating to his triple celling, Defendants, in their individual capacities, are entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim, Williams must show the deprivation of a right secured by the United States Constitution or the laws of the United States. However, government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of the proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015). To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. Al-Kidd*, 563 U.S. 731, 741 (2011)). In determining whether a right is clearly established, courts must not define the

9

right "at a high level of generality." *Id.* (quoting *Al-Kidd*, 563 U.S. at 742). Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." *Id.* (quoting *Al-Kidd*, 563 U.S. at 742). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. *See Davis v. Scherer*, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue.").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. *Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431, 449 (3d Cir. 2020) (quoting *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 142 (3d Cir. 2017)).

Here, the Court cannot conclude that it was clearly established that merely placing an inmate in a cell with two other inmates would violate an individual's constitutional rights. Indeed, several courts have found that the practice of triple celling was not a clear constitutional violation. *See Hubbard*, 538 F.3d at 236-38 (noting that neither the Supreme

Court nor the Third Circuit had clearly established a right of pretrial detainees to be free from triple celling or from sleeping on a mattress placed on the floor); *Schroeder v. Kaplan*, 60 F.3d 834 (9th Cir.1995) (holding that, where a prisoner was forced to sleep on the floor for almost one month, the law was not clearly established on whether mattress deprivation was an Eighth Amendment violation); *Nelson v. Hill*, 211 F. App'x 88, 90 (3d Cir. 2006) (nonprecedential) (finding that triple celling in the pretrial detainee context was not clearly established).

Given that Williams has failed to allege that Defendants violated a clearly established right in this setting, Defendants are entitled to qualified immunity on this Eighth Amendment claim.

## IV.  Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). Since Williams' claims are factually and legally flawed, the Court concludes that allowing leave to amend would be both futile and inequitable. *See Grayson*, 293 F.3d at 108.

## V.  Conclusion

Based on the foregoing, the Court will grant Defendants' motion (Doc. 13) to dismiss.

A separate Order shall issue.

_____
Robert D. Mariani
United States District Judge

Dated: April 26, 2024